SIMPSON et al. v. GEARY et al.

(District Court, D. Arizona. March 4, 1913.)

No. 79.

1. COURTS (§ 276*)—JURISDICTION OF FEDERAL COURTS—DISTRICT OF SUIT—WAIVER.

A defendant in a suit in a federal court may waive the objection that the suit is not brought in the district of his residence or that of the plaintiff, as required by Judicial Code (Act March 3, 1911, c. 231) § 51, 36 Stat. 1101 (U. S. Comp. St. Supp. 1911, p. 150), and does waive it by entering a general appearance.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 815; Dec. Dig. § 276.*]

2. COURTS (§ 328*)—JURISDICTION OF FEDERAL COURTS—AMOUNT IN CONTROVERSY.

Where the interests of the plaintiffs or complainants in a suit are separate and distinct, as shown by their pleading, although of the same

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

general character, their claims cannot be aggregated to make the requisite amount to give a federal court jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 890–896; Dec. Dig. § 328.*]

3. COURTS (§ 282*)—JURISDICTION OF FEDERAL COURTS—SUITS FOR PROTECTION OF CIVIL RIGHTS—"CIVIL RIGHTS."

The "civil rights" protected by section 1 of the fourteenth amendment to the Constitution, and to redress deprivation of which the federal courts are given jurisdiction by Judicial Code (Act March 3, 1911, c. 231) § 24, par. 14, 36 Stat. 1092 (U. S. Comp. St. Supp. 1911, p. 137), are only such rights as are derived from the Constitution or some statute of the United States, and rights not so derived are left exclusively to the protection of the states.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 820–824; Dec. Dig. § 282.*

For other definitions, see Words and Phrases, vol. 2, pp. 1199, 1200; vol. 8, p. 7603.]

4. CONSTITUTIONAL LAW (§ 206*)—RAILROADS (§ 230*)—PRIVILEGES AND IMMUNITIES—TRAIN CREWS.

The provision of Act Ariz. May 7, 1912 (Sess. Laws 1912, c. 16) § 8, requiring all flagmen on railroad trains to have at least one year's experience as brakemen, is not in violation of section 1 of the fourteenth constitutional amendment, as abridging the privileges or immunities of citizens, but is a valid exercise of the police powers of the state.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. §§ 625–648; Dec. Dig. § 206;* Railroads, Cent. Dig. § 744; Dec. Dig. § 230.*]

In Equity. Suit by T. R. Simpson, K. R. Conners, T. E. Fugate, E. Nat Reynolds, H. Y. Murry, Wm. Johnson, Frank Carroll, J. D. Walton, and R. L. Taylor against W. P. Geary, F. A. Jones, and A. W. Cole, members of the Corporation Commission of Arizona, George P. Bullard, Attorney General for Arizona, Fred W. Nelson, County Attorney for Apache County, J. E. Crosby, County Attorney for Navajo County, C. B. Wilson, County Attorney for Coconino County, P. W. O'Sullivan, County Attorney for Yavapai County, Charles W. Hernden, County Attorney for Mohave County, Frank H. Lyman, County Attorney for Maricopa County, and Fred L. Ingraham, County Attorney for Yuma County, all in Arizona, and the Atchison, Topeka & Santa Fé Railway Company, a Kansas corporation. On motion by defendants to dismiss for want of jurisdiction. Motion sustained.

Wilson & Lewis, of Albuquerque, N. M., for complainants.

Chalmers & Kent, of Phœnix, Ariz., for defendant Atchison, T. & S. F. Ry. Co.

George P. Bullard, Atty. Gen. of State of Arizona, and Leslie Hardy, Asst. Atty. Gen., for other defendants.

Before GILBERT and MORROW, Circuit Judges, and DIETRICH, District Judge, convened under section 266 of the Judicial Code of the United States (Act March 3, 1911, 36 Stat. 1162 [U. S. Comp. St. Supp. 1911, p. 236]).

MORROW, Circuit Judge. It is alleged in the bill of complaint that the complainants are citizens of the state of New Mexico; that the Atchison, Topeka & Santa Fé Railway Company is a corporation of the state of Kansas, and a resident and citizen of that state; that

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the other defendants are each residents and citizens of the state of Arizona. It is further alleged that the complainants are, and have been for a number of years, employed by the defendant the Atchison, Topeka & Santa Fé Railway Company, as porters upon the defendant's trains, and that they are also brakemen and flagmen on said trains; that by an act of the Legislature of the state of Arizona (Act of May 7, 1912; Session Laws of Arizona, p. 31) it is provided (section 3) that all passenger, mail, or express trains, composed of six or more cars, and operated outside of the yard limits, shall be equipped with and shall carry a crew consisting of not less than one engineer, one fireman, one conductor, one baggage master, one flagman, and one brakeman; that by section 8 it is provided that all flagmen mentioned in the act shall have had at least one year's experience as brakemen; that the defendant railway company has notified complainants that under said law they were not eligible for the positions of brakemen or flagmen, and the said defendant would become liable to the penalties prescribed by said statute should it retain complainants in its employ, and has notified complainants that it would have to replace them by others on December 1, 1912. It is alleged in the bill that each of the complainants receives a salary of $780 per year, amounting in the aggregate to $7,020 per annum. Complainants seek by the present bill to enjoin the defendants, as officers of the state, from enforcing the penalties prescribed by the act of the Legislature complained of, against the defendant the Atchison, Topeka & Santa Fé Railway Company, if said defendant company does not discharge the complainants from its service, and to enjoin the railway company from discharging the complainants from their employment.

The Attorney General of the state of Arizona, appearing specially for all of the defendants other than the Atchison, Topeka & Santa Fé Railway Company, has interposed a motion to dismiss the bill of complaint on the ground that it appears upon the face of the complaint that this court has no jurisdiction of the cause.

[1] The jurisdiction of the court is invoked by the complainants on the ground of diverse citizenship, and also on the ground that the controversy is one arising under the Constitution and laws of the United States. The complainants are citizens of the state of New Mexico, and all the defendants (except the Atchison, Topeka & Santa Fé Railway Company) are residents and citizens of the state of Arizona. The defendant railway company is a resident and citizen of the state of Kansas. The action is therefore open to the objection that as against the defendant railway company the suit is not brought in the district where the defendant resides, as required by the statute, now section 51 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]); but that objection may be waived. St. Louis & San Francisco Ry. Co. v. McBride, 141 U. S. 127, 132, 11 Sup. Ct. 982, 35 L. Ed. 659; In re Moore, 209 U. S. 490, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164; Western Loan Company v. Butte & Boston Min. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101; Kreigh v. Westinghouse Co., 214 U. S. 249, 29 Sup. Ct. 619, 53 L. Ed. 984; Atchison, Topeka & Santa Fé Ry. Co. v. Gilliland, 193 Fed. 608, 610, 113 C. C. A. 476. And, having appeared

generally in the case, it must be held that the defendant railway company has waived the objection that the suit is not brought in the district of its residence.

[2] The diversity of citizenship required by the statute is, therefore, sufficiently stated; but is the amount involved sufficient to give the court jurisdiction? It is alleged in the complaint that the amount involved, exclusive of interest and costs, exceeds the sum or value of $3,000. But this allegation is not so conclusive as to determine the matter in controversy. In Vance v. Vandercook Co., 170 U. S. 468, 472, 18 Sup. Ct. 645, 647 (42 L. Ed. 1111), the Supreme Court said:

"In determining from the face of the pleading whether the amount really in dispute is sufficient to confer jurisdiction upon a court of the United States, it is settled that if from the nature of the case, as stated in the pleadings, there could not legally be a judgment for the amount necessary to jurisdiction, jurisdiction cannot attach, even though damages be laid in the declaration in a larger sum."

In North America, etc., Co. v. Morrison, 178 U. S. 262, 267, 20 Sup. Ct. 869, 871 (44 L. Ed. 1061), the Supreme Court held that:

"When the plaintiff asserts as his cause of action a claim which he cannot be legally permitted to sustain by evidence, a mere ad damnum clause will not confer jurisdiction on the Circuit Court; but the court, on motion or demurrer, or of its own motion, will dismiss the suit."

In Newburyport Water Company v. Newburyport, 193 U. S. 561, 576, 24 Sup. Ct. 553, 556 (48 L. Ed. 795), Mr. Justice White, in delivering the opinion of the court, said:

"If jurisdiction is to be determined by the mere fact that the bill alleged constitutional questions, there was, of course, jurisdiction. But that is not the sole criterion. On the contrary, it is settled that jurisdiction does not arise simply because an averment is made as to the existence of a constitutional question, if it plainly appears that such averment is not real and substantial, but is without color of merit."

To the same effect was the opinion of this court in McGilvra v. Ross, 164 Fed. 604, 606, 90 C. C. A. 398.

It follows that, unless complainants can be permitted to aggregate their several claims, the amount in dispute is not sufficient to confer jurisdiction. But the substantial matter in controversy, as appears upon the face of the complaint, is not the aggregate claims, but the individual claim of each complainant, which is separate and distinct each from the other, and they are only joined together in this suit because it is convenient to so combine them, and appears to give the court jurisdiction of the cause. There is no unity of interest in the separate claims, and the most that can be said is that they belong to a class having the same general character. This is not sufficient. In Clay v. Field, 138 U. S. 464, 479, 11 Sup. Ct. 419, 425 (34 L. Ed. 1044), Mr. Justice Bradley said:

"The general principle observed in all is that if persons be joined in a suit in equity or admiralty, and have a common and undivided interest, though separable as between themselves, the amount of their joint claim or liability will be the test of jurisdiction; but where their interests are distinct, and they are joined for the sake of convenience only, and because they form a class of parties whose rights or liabilities arose out of the same transaction, or have relation to a common fund or mass of property sought to be administered, such distinct demands or liabilities cannot be aggregated together

for the purpose of giving this court jurisdiction by appeal, but each must stand or fall by itself alone."

In Troy Bank v. Whitehead & Co., 222 U. S. 39, 40, 32 Sup. Ct. 9, (56 L. Ed. 81), the court said:

"When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of each be of the requisite jurisdictional amount."

As the demand of each of the complainants in this case is fixed by the complaint at the annual compensation of $780, it is clear that the amount involved is not sufficient to give this court jurisdiction of the cause.

The jurisdiction of the court is also invoked upon the ground that the controversy is one arising under the Constitution and laws of the United States; but in such a case the amount in controversy must be the same as where the jurisdiction is invoked on the ground of diverse citizenship, and what has been said upon that subject is applicable to this ground of jurisdiction.

[3] But the complainants contend that their case comes within the jurisdiction of the court under the provisions of the fourteenth amendment to the Constitution of the United States, and the fourteenth subdivision of section 24 of the Judicial Code. The latter provides that District Courts shall have original jurisdiction—

"of all suits, at law or in equity, authorized by law to be brought by any person to redress deprivation, under color of any law, statute, ordinance, regulation, custom or usage of any state, of any right, privilege or immunity secured by the Constitution of the United States, or of any right secured by any law of the United States providing for equal rights of citizens of the United States, or of all persons within the jurisdiction of the United States."

As the amount in dispute is not an element of jurisdiction under this statute, the complainants invoke the jurisdiction of the court without regard to that limitation contained in the first subdivision of section 24 of the Judicial Code.

If the case comes within this provision, it may be conceded that the limitation as to the amount in dispute does not apply. Does the case come within this statute? What are the civil rights here protected?

In Holt v. Indiana Manufacturing Co., 176 U. S. 68, 72, 20 Sup. Ct. 272, 273 (44 L. Ed. 374) the Supreme Court, referring to the provision of the statute under consideration, which was then the sixteenth subdivision of section 629 of the Revised Statutes (U. S. Comp. St. 1901, p. 506), and also to section 1979 of the Revised Statutes (U. S. Comp. St. 1901, p. 1262), said:

"All these provisions were brought forward from the act of April 20, 1871, entitled 'An act to enforce the provisions of the fourteenth amendment to the Constitution of the United States, and for other purposes.' 17 Stat. 13, c. 22. Assuming that they are still in force, it is sufficient to say that they refer to civil rights only, and are inapplicable here."

That case was brought to enjoin the collection of certain personal taxes based upon an assessment upon the value of certain rights secured under letters patent of the United States. It was held by the Supreme Court that the Circuit Court did not have jurisdiction of the case. The term "civil rights" was not defined, nor was it necessary. The civil rights which it is the purpose of this statute to protect are

only those rights, privileges, and immunities secured by the Constitution of the United States, or some law of the United States passed in pursuance of constitutional authority. Rights, privileges, and immunities not derived from the federal Constitution, or secured thereby, are left exclusively to the protection of the states. Slaughter House Cases, 16 Wall. 36, 71, 21 L. Ed. 394; United States v. Cruikshank, 92 U. S. 542, 550, 551, 23 L. Ed. 588; Presser v. Illinois, 116 U. S. 252, 266, 6 Sup. Ct. 580, 29 L. Ed. 615; Hodges v. United States, 203 U. S. 1, 27 Sup. Ct. 6, 51 L. Ed. 65; Logan v. United States, 144 U. S. 263, 293, 12 Sup. Ct. 617, 36 L. Ed. 429.

The right to contract for and retain employment in a given occupation or calling is not a right secured by the Constitution of the United States, nor by any Constitution. It is primarily a natural right, and it is only when a state law regulating such employment discriminates arbitrarily against the equal right of some class of citizens of the United States, or some class of persons within its jurisdiction, as, for example, on account of race or color, that the civil rights of such persons are invaded, and the protection of the federal Constitution can be invoked to protect the individual in his employment or calling.

[4] The complainants' case is not within this protection. They have not been deprived of any of the equal rights of citizens or persons. The state law applies to all persons alike, without discrimination, whether citizens of the United States or persons within its jurisdiction, and it is plainly a regulation enacted under the police power of the state, having for its purpose the safety of passengers on the railways operating within the state.

In the late case of Chicago, R. I. & Pac. Ry. Co. v. Arkansas, 219 U. S. 453, 465, 31 Sup. Ct. 275, 279 (55 L. Ed. 290), the Supreme Court had before it what is known as the "full crew" act of the state of Arkansas. The act provides for the equipment of freight trains upon substantially the same general principles as the Arizona act provides for the equipment of passenger trains. The railroad in that case raised the question of the constitutionality of the act on the ground that it undertook to regulate interstate commerce. The Attorney General of the state defended the act on the ground that it was a rightful exercise of the police power of the state. The court, in sustaining the constitutionality of the act as within the police power of the state, held that it was not too much to say that the state was under an obligation to establish such regulations as were necessary and reasonable for the safety of all engaged in business or domiciled within its limits. The court said further:

"Local statutes directed to such an end have their source in the power of the state, never surrendered, of caring for the public safety of all within its jurisdiction; and the validity under the Constitution of the United States of such statutes is not to be questioned in a federal court, unless they are clearly inconsistent with some power granted to the general government, or with some right secured by that instrument, or unless they are purely arbitrary in their nature."

Under the authority of this case, it must be held that the Arizona statute is the rightful exercise of the police power of the state, and that this court has no jurisdiction of the case.

The temporary restraining order is therefore discharged, the motion for a temporary injunction denied, and the bill dismissed.